IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00258-MSK-KMT

COLORADO LEGAL SERVICES, and
TEXAS RIOGRANDE LEGAL AID, INC.,

       Plaintiffs,

v.

LEGAL AID NATIONAL SERVICES, d/b/a The Lans Corp.,
ED BROWN MANAGEMENT, INC.,
LEGAL AIDE, INC.,
LEGAL AID LOW COST SERVICES, INC.,
LEGAL AIDE DIVORCE SERVICES, INC.,
LEGAL SUPPORT SERVICES CORP., d/b/a/ Legal Aid Support Services, Inc.,
P.I. INTERNATIONAL CORP.,
KENDRICK BROWN,
JASMINE EWING WHITE,
MARK STEVEN MEAD,
MICHELLE MIKI MINZER, and
THOMAS MATHIOWETZ,

       Defendants.

## OPINION AND ORDER GRANTING MOTIONS TO DISMISS

**THIS MATTER** comes before the Court pursuant to Defendant Minzer's Motion to Dismiss **(# 70)**, and the Plaintiffs' response **(# 88)**; and Defendant Mead's Motion to Dismiss **(#94)**, and the Plaintiffs' response **(# 98)**.

According to the Complaint **(# 1)**, the Plaintiffs are non-profit agencies that supply legal services to indigent clients in the states of Colorado and Texas. As relevant here, Defendant Minzer is an individual, alleged to have served as Corporate Counsel to Defendant Legal Aid

National Services ("LANS") during the time period at issue here.  Defendant Mead is alleged to be an individual, alleged to have served as "Attorney Division Manager" for LANS, who held himself out to be an attorney but who is not actually licensed to practice in any jurisdiction.  The Complaint alleges that LANS (and the various Defendants involved with it) operate to deceive potential clients into believing that they are a legitimate "Legal Aid" service, and proceed to charge such clients unreasonable fees for inadequate (or non-existent) legal services.  The Complaint alleges 12 causes of action, all of which are alleged collectively against "Defendants" without any further differentiation: (i) a claim under the civil provisions of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*, in that the Defendants collectively have engaged in a criminal enterprise through numerous acts of wire fraud; (ii) a claim that each Defendant has committed trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a), by infringing upon unspecified service marks held by the Plaintiffs; (iii) a claim for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) & (B), in that misleading statements made by the Defendants in the course of their advertising have inured to the injury of the Plaintiffs; (iv) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), in that the Defendants have falsely designated the origin of their services to the injury of the Plaintiffs; (v) unfair competition under Colorado common law, in that the Defendants have used service names that are confusingly similar to the Plaintiffs' service names; (vi) violation of the Texas Anti-Dilution Act, Tx. Bus. & Com.§ 16.29, for essentially the same reasons; (vii) trademark infringement under Texas common law, for essentially the same reasons as the federal trademark infringement claim; (viii) unfair competition under Texas common law, for essentially the same reasons as the same claim under

2

Colorado law; (ix) violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq.*, for essentially the same reasons stated in the other claims in this action; (x) tortious interference with prospective business relations under Colorado common law, in that the Defendants improperly induced potential clients of the Plaintiffs not to enter into relations with the Plaintiffs; (xi) tortious interference with prospective business relations under Texas common law, for essentially the same reasons; and (xii) with regard to Defendant Mead, unauthorized practice of law under Texas common law.

Defendant Minzer and Mead were both served with process in March 2008 **(# 17, 20)**, and both promptly filed Answers **(# 21, 22)**.[1] On August 25, 2008, Defendant Minzer filed a *pro se*[2] Motion to Dismiss **(# 70)**, arguing that: (i) the Complaint fails to state any claim against her,

---

[1] Technically, the parties' filing of Answers operated as a waiver of their right to thereafter move to dismiss pursuant to Fed. R. Civ. P. 12(b), as "[a] motion asserting any [of the Rule 12(b) defenses] must be made before pleading if a responsive pleading is allowed." Nevertheless, the Court could treat the movants' motions as being motions for judgment on the pleadings under Fed. R. Civ. P. 12(c), and the standards for assessing such a motion are the same as those for Rule 12(b) motions. *See Society of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1240-41 (10th Cir. 2005). Thus, the movants' filing of Answers does not alter the analysis herein.

[2] Generally, the Court is required to liberally construe the pleadings of a *pro se* party. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In other words, the Court must overlook technical formatting errors and other defects in the *pro se* party's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the party according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

Because Defendant Minzer is a licensed attorney, her pleadings are not necessarily entitled to liberal construction under *Haines*. *Mann v. Boatright*, 477 F.3d 1140, 1148 n. 4 (10th Cir. 2007). However, Defendant Mead, who is admittedly not an attorney, enjoys the benefits of liberal construction with regard to his *pro se* motion.

insofar as she is only mentioned in one specific allegation identifying the parties, and not referenced in any capacity in the substantive allegations of the Complaint; (ii) that the Complaint fails to plead any viable claims against her, in that she never engaged in the practice of law in Texas; (iii) as to the RICO claim, the Complaint fails to plead any of the alleged acts of wire fraud with particularity as required by Fed. R. Civ. P. 9(b), and fail to allege facts that demonstrate her participation in the fraudulent scheme; (iv) the RICO claim fails to adequately allege facts that demonstrate her control of the criminal enterprise at issue; (v) with regard to the Lanham Act claims, the Complaint fails to allege facts demonstrating that she made any false or misleading advertisements or representations, that she did so with regard to interstate commerce, that her actions were likely to cause confusion among consumers, and that her actions injured the Plaintiffs; and (vi) that the Plaintiffs fail to allege facts sufficient to plead any of the elements of a claim under the Colorado Consumer Protection Act against her. On November 21, 2008, Defendant Mead filed a *pro se* Motion to Dismiss **(# 94)**, that largely repeats the same arguments and authorities (often verbatim) cited in Defendant Minzer's motion.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers,*

4

*Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

All parties have made amplified (or disputed) the factual contentions in the Complaint and attached supplemental factual material to their motions or responses. As discussed above, the Court is required to disregard such supplemental factual material when considering a motion under Rule 12(b)(6).[3]

The Court will not independently assess the sufficiency of each of the claims against each of the moving Defendants, as it is clear that, as currently plead, the Complaint is insufficient as to these parties. Among the familiar rules of pleading is that a complaint must give the defendants fair notice of the claim and the grounds upon which it rests. *Conley*, 355 U.S. at 47. It need not contain detailed factual allegations, but at the same time, the plaintiff cannot merely supply "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). In *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008), the court stated that in § 1983 cases, where defendants often

---

[3]The Plaintiffs note that the Court has the discretion to either consider this supplemental material, thereby converting the motion to one for summary judgment (with additional notice to be given to the parties), or the Court may disregard the supplemental material and resolve the matter on the face of the Complaint. Fed. R. Civ. P. 12(d). In deference to the fact that discovery is by no means complete, treating the motions as ones for summary judgment would be inappropriate and inefficient. Accordingly, the Court disregards all supplemental factual material beyond the face of the Complaint and resolves the motion under the Rule 12 standards.

include both legal entities and individual actors, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations" alleged against the entities. (Emphasis added.) It explained that when a plaintiff uses the collective term "defendants" to refer to a variety of entities and individuals, without distinction among the various defendants, "it is impossible for any of these individuals to ascertain what particular[ ] acts they are alleged to have committed." *Id.* at 1250. The same rationale applies with equal force in a case such as this, where a number of defendants are legal entities acting through officers and agents, and where other defendants are individuals of varying involvement in operational decisions.

Turning first to Defendant Minzer, the Court finds that the 77-page Complaint gives inadequate notice to Ms. Minzer of the particular acts she is alleged to have committed. Indeed, Defendant Minzer is mentioned by name only once in the Complaint, in an allegation that merely identifies her as being "Corporate Counsel" at LANS. *Docket* # 1, ¶ 29. Nothing in the Complaint purports to describe what duties a Ms. Minzer performed as "Corporate Counsel," or otherwise attempts to explain why an individual occupying that position should be held individually liable for unlawful acts committed by LANS. Without some understanding of the facts that allegedly render her responsible for LANS' misconduct (as the Complaint certainly gives no notice of any misconduct allegedly perpetrated directly by Ms. Minzer), Ms. Minzer has not been provided with fair notice of the grounds for the claims against her.

As in *Robinson*, the Plaintiffs here have couched many of the operative factual allegations in the Complaint in a collective, undifferentiated reference to "Defendants." Taken

at face value, the Complaint alleges that Defendant Minzer "[is not a] legitimate 'Legal Aid' program[ ]," that she "maintain[ed] local . . . and national toll free numbers" in telephone directories, that she operated a number of websites, and that she has been engaged in these actions "for more than a decade." *Docket # 1*, ¶ 41, 47, 49, 62. The Complaint alleges that "Defendants" – that is, Defendants Minzer, among others – "have repeatedly ignored court orders, injunctions, sanctions, and fines imposed in connection with their unauthorized practice of law," *Docket # 1*, ¶ 64, even though the Complaint goes on supply detail regarding such orders and injunctions, none of which mention Defendant Minzer. It is abundantly clear to the Court that the Complaint lazily relies on the term "Defendants" to mean "one or more of the Defendants," rather than its plain meaning of "all Defendants." As a result, the Complaint is replete with vague factual averments, applicable by their terms to individuals such as Defendant Minzer, even though it is plainly apparent that such averments could not withstand a Fed. R. Civ. P. 11(b)(3) with regard to many of the named Defendants.

Obviously, the Plaintiffs can plead specific acts by specific actors. Paragraphs 88 - 467 describe the experiences of various clients of the Defendant businesses. These allegations set forth by name the particular corporations involved and the individuals who were involved with each particular incident. If any of these allegations specifically mentioned Ms. Minzer, the Court might find that the Complaint stated a viable claim[4] against her, but Ms. Minzer is never

---

[4]The undifferentiated use of the term "Defendants" with regard to each of the claims for relief is itself problematic. The Complaint itself alleges that Ms. Minzer is licensed to practice in Colorado, but many of the claims apparently asserted against her arise under Texas law. It is not clear whether the Plaintiffs are asserting that Ms. Minzer engaged in misconduct in the State of Texas, or whether "Defendants" as used in each claim does not mean "all Defendants." If the latter, the Complaint certainly provides no notice to the various Defendants of the claims they are and are not subject to.

mentioned. Simply put, the Complaint utterly fails to give Ms. Minzer fair notice of the <u>particular</u> claims that are asserted against her, much less some indication of the grounds upon which the Plaintiffs level those claims. Without such notice, Ms. Minzer is entitled to dismissal of the claims against her pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6).

The situation with Defendant Mead is slightly different. Paragraph 28 of the Complaint alleges that Defendant Mead was "reportedly the Attorney Division Manager at LANS." If the Complaint were otherwise as silent as to Defendant Mead's personal participation in the specific acts alleged in the Complaint, the Court would find it deficient against him for the same reasons (if not more, considering the additional ambiguities contained in the word "reportedly"). But the Complaint does allege a number of specific acts by an individual named "Mark Mead." For example, it alleges that in or about July 2007, Isela and Roberto Caldera contacted LANS for legal assistance. The Complaint alleges that in September 2007, the Calderas spoke to "Mark Mead," who promised to file certain legal papers on their behalf, but failed to do so. *Docket* # 1, ¶ 260-267. The Complaint also alleges that in April 2007, Blanca Duran contacted LANS for assistance with a legal matter. It alleges that in August 2007, "Mark Mead" contacted Ms. Duran and stated that he would "be taking over her case," that he would be sending out papers for her to sign, and that he would file the papers with the court, yet none of these representations turned out to be true. *Docket* # 1, ¶ 285-290. Similar facts involving "Mark Mead" are alleged in portions of the Complaint detailing the experiences of Inna Carrasco, *Docket* # 1, ¶ 391-394, and Rosario Rodriguez, *Docket* # 1, ¶ 448-467. Thus, unlike the situation with Defendant Minzer, the Court finds that the Complaint does specifically identify a number of acts engaged in by Defendant Mead. Although the Complaint repeatedly places the allegations involving "Mark

8

Mead" in quotes, as if to suggest that that identity is somehow suspect, a reasonable reader could infer that the "Mark Mead" referred to in the factual averments is the same person as Defendant Mark Steven Mead.

Nevertheless, the Court agrees with Defendant Mead that although the Complaint gives him some indication of the acts he is alleged to have committed, it fails to give him fair notice of the grounds upon which those acts give rise to the 12 claims that are asserted collectively against all the Defendants. It is difficult to imagine how some of the claims could be maintained against Defendant Mead under the specific facts described above. For example, it is not clear that the Plaintiffs truly intend to assert that Defendant Mead is liable for the various Lanham Act claims, insofar as the Complaint alleges no facts that would suggest that Defendant Mead was personally involved in selecting names for LANS and the other Defendant corporations, or that he was responsible for the contents of their advertising. It is certainly unclear how the Plaintiffs believe that Defendant Mead can be held liable on Claim 12, Unlawful Practice of Law, in that the Complaint does not allege how "the above acts by Non-Attorney Defendants [such as Defendant Mead] constitute the unauthorized practice of law." *Docket* # 1, ¶ 578. (Indeed, the Complaint reflects only one instance in which Defendant Mead allegedly stated his title or duties to a client, and in that instance, he referred to himself as "Senior Paralegal." *Docket* # 1, ¶ 448.) Simply put, the Plaintiffs' description of their particular causes of action are often little more than "labels and conclusions" or "formulaic recitations of elements," giving no notice to the Defendants of the grounds upon which the Plaintiffs believe the facts establish the elements of the claim. *Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Although the Complaint describes certain specific acts by Defendant Mead, it gives him no notice of the basis upon which the Plaintiffs

9

believe that such acts establish the elements of the various causes of action. For this reason, the Complaint is subject to dismissal as against Defendant Mead as well.

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) must be made mindful of the fact that many defects in pleading can be cured by amendment of the Complaint. Leave to amend a pleading under Fed. R. Civ. P. 15(a) must be "freely given," and there is nothing in the record in this case that would suggest that it would be unfair or improper to give the Plaintiffs the opportunity to replead and refine the Complaint. *See Beerheide v. Zavaras*, 997 F.Supp. 1405, 1409 (D. Colo. 1998) (leave to amend should be denied only where the proposed amendment would be in bad faith, untimely, prejudicial, or futile), *citing Foman v. Davis*, 371 U.S. 178, 182 (1962). Allowing repleading would have several salutary benefits. First, it would allow the Plaintiffs an opportunity to correct the numerous undifferentiated references to "Defendants," avoiding the possibility of sanctions for such collective allegations that cannot reasonably refer to all of the Defendants. Coming after the Plaintiffs have had some ability to engage in discovery, it allows the Plaintiffs the opportunity to be more specific in their factual allegations and assertion of claims against individuals such as Ms. Minzer and Mr. Mead, and it will potentially allow the Plaintiffs to streamline the Complaint to focus on the allegations and claims applicable to the remaining Defendants. And, perhaps most importantly, it provides Defendants like Ms. Minzer and Mr. Mead the opportunity to understand the acts they are alleged to have engaged in and the basis upon which the Plaintiffs seek to hold them liable for such actions.

Accordingly, Defendant Minzer's Motion to Dismiss **(# 70)** and Defendant Mead's Motion to Dismiss **(# 94)** are **GRANTED**. Within 20 days of the date of this Order, the Plaintiffs may file an Amended Complaint correcting the pleading defects identified in this

Order. If no Amended Complaint is filed within this deadline, the claims against Ms. Minzer and Mr. Mead will be **DISMISSED** without prejudice.

Dated this 10th day of February, 2009

                                     **BY THE COURT:**

                                     Marcia S. Krieger
                                     United States District Judge