IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00258-MSK-KMT

COLORADO LEGAL SERVICES, and
TEXAS RIOGRANDE LEGAL AID, INC.,

      Plaintiffs,

v.

LEGAL AID NATIONAL SERVICES, d/b/a THE LANS CORP.,
ED BROWN MANAGEMENT, INC.,
LEGAL AIDE INC.,
LEGAL AID LOW COST SERVICES INC.,
LEGAL AIDE DIVORCE SERVICES, INC.,
LEGAL SUPPORT SERVICES CORP. d/b/a LEGAL AID SUPPORT SERVICES, INC.,
P.I. INTERNATIONAL, CORP.,
KENDRICK BROWN, and
JASMINE EWING WHITE,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

This matter is before the court on "Plaintiffs' Motion for Default Judgment" ("Motion")

[Doc. No. 111, filed April 15, 2009].  Plaintiffs seek a default judgment against Defendants

Legal Aide Inc., Legal Aid Low Cost Services Inc., Legal Aide Divorce Services, Inc., Legal

Support Services Corp., d/b/a/ Legal Aid Support Services, Inc., and Legal Aid National

Services, d/b/a The LANS Corp. ("LANS"), Kendrick Brown (a/k/a Kendrick White) ("White"),

and Jasmine Ewing White ("Ewing White") (hereinafter collectively "Defaulting Defendants")

for permanent injunctive relief.

### *Procedural History*

The Complaint in this matter was filed on February 7, 2008.  (Compl. [Doc. No. 1]).

Service of the summons and complaint was made on Kendrick Brown individually on February

23, 2009, by delivering a copy of the summons and complaint to Kendrick Brown, Jr., the son of

Kendrick Brown, described as a black male approximately 14-20 years of age, at 2600 S. Town

Center Drive, #2129, Las Vegas, Nevada, Kendrick Brown's residence or abode.  [Doc. No. 7.]

Service was made on Legal Aide Inc. [Doc. No. 11],  Legal Aid Low Cost Services Inc. [Doc.

No. 8],  Legal Aide Divorce Services, Inc. [Doc. No. 10], Legal Aid National Services, d/b/a The

LANS Corp.  [Doc. No. 9], and  Legal Support Services Corp., d/b/a/ Legal Aid Support

Services, Inc. [Doc. No. 12] on February 23, 2009  also by leaving a copy of the summons and

complaint for each entity with Kendrick Brown, Jr., the son of Kendrick Brown, at 2600 S. Town

Center Drive, #2129, Las Vegas, Nevada, Kendrick Brown's residence or abode.  Jasmine Ewing

White was served by leaving a copy of the summons and complaint with Ewing White's adult

female sister at 8000 Badura Ave, Apt. 1168, Las Vegas, Nevada, Ewing White's residence or

abode, on February 25, 2008. [Doc. No. 14.] All entities and the two individuals were served by

a representative of Legal Process Service, License 604, of Las Vegas, Nevada.

The Complaint alleges that 1) Legal Aide Inc. is a Colorado corporation with a

principal place of business in Lone Tree, Colorado and that Sandra Forbs is the registered agent

at the same business address, 2) Legal Aid Low Cost Services Inc. is a Colorado corporation

with a principal place of business in Littleton, Colorado and that Kendrick White a/k/a Kendrick

Brown is the registered agent at the same business address, 3) Legal Aide Divorce Services, Inc.

is a Colorado corporation with a principal place of business in  Denver, Colorado 80210 and that

Eric Jones (a known alias of Kendrick White a/k/a Kendrick Brown) is the registered agent at a

Lone Tree, Colorado address, 4) Legal Aid National Services, Inc. (d/b/a The LANS Corp.,

and/or Legal Aid Housing Development) is a Colorado nonprofit corporation with a principal

place of business in Aurora, Colorado and that Kendrick White a/k/a Kendrick Brown is the

registered agent; and, 6) Legal Support Services Corp. (d/b/a Legal Aid Support Services, Inc.) is

a Colorado corporation with a principal place of business in Denver, Colorado and that Kendrick

White a/k/a Kendrick Brown is the registered agent at a different Denver, Colorado address.

Fed. R. Civ. P. 12(a) provides, "[u]nless another time is specified by this rule or a federal

statute, the time for serving a responsive pleading is as follows: (A) A defendant must serve an

answer: (I) within 20 days after being served with the summons and complaint."  Answers were

due on March 14, 2008 for all the Defaulting Defendants except for Jasmine Ewing White,

whose Answer was due on March 17, 2008.  None of the Defaulting Defendants has filed an

Answer or other responsive pleading as of the date of this Recommendation and the time for

such filing has long passed.

Plaintiffs moved for Clerk's Entry of Default against these defendants[1] on April 7, 2008.

[Doc. No. 29.]  The Motion for Entry of Default was mailed to Jasmine Ewing White at 8000

---

[1] Plaintiffs also moved for entry of default against Ed Brown Management, Inc.

Badura Avenue, Apt 1168, Las Vegas, NV 89113 and to Kendrick Brown (a/k/a Kendrick White) at 2600 S. Town Center Drive, #2129, Las Vegas, NV 89135.  The mail to both Kendrick Brown and Jasmine Ewing White was returned to the court as undeliverable on April 21, 2008. [Doc. Nos. 37 and 38.]

The plaintiffs, through declaration of J. Alexander Lawrence, have affirmed that none of the Defaulting Defendants is an infant or an incompetent person, nor are Kendrick Brown or Jasmine Ewing White members of the military.  (Declaration of J. Alexander Lawrence in Support of Plaintiffs' Motion for Default Judgment, hereinafter "Alexander Decl." [Doc. No. 111-4] at ¶¶ 16 and 17.)

The claims in this matter were brought pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; the Lanham Act, 15 U.S.C. § 1125(a) (federal statutory trademark infringement and unfair competition); 15 U.S.C. § 1125(a)(1) (federal false advertising or promotion); and state statutes and common law. (Compl. at 2.)   This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks); and 28 U.S.C. § 1367 (supplemental jurisdiction). Venue for this action is appropriate pursuant to 28 U.S.C. § 1391(b)(2).

### *Legal Standard*

Default judgment may be entered against a party who fails to appear or otherwise defend pursuant to Fed. R. Civ. P. 55.  Pursuant to Fed. R. Civ. P. 55(b)(2), judgment by default may be entered

4

By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and accord a right of trial by jury to the parties when and as required by any statute of the United States.

*Id.*

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of Southern Connecticut, Limited Partnership v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001); *Deery American Corp. v. Artco Equipment Sales, Inc.*, 2007 WL 437762, *2 (D. Colo. 2007). Even after default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment" since a party in default does not admit conclusions of law. *See McCabe v. Campos*, 2008 WL 576245, *2 (D. Colo. 2008) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true. *Vibe Technologies, LLC v. Suddath*, 2009 WL 2055186, *1 (D. Colo. 2009) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). *See also DIRECTV, Inc. v. Bloniarz*, 336 F. Supp. 2d 723, 725 (W.D. Mich. 2004) ("It is well-established that once a default is entered

against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in

the complaint pertaining to liability."). In addition, the court accepts the undisputed facts set

forth in the affidavits and exhibits. *Id.*

> *Analysis*

> A.    *Service of Process*

Fed. R. Civ. P. 4(e)(1) states that an individual may be served by following state law for

serving a summons in courts of general jurisdiction in the state where the district court is located

or where service is made.  Fed. R. Civ. P. 4(h), concerning proper service upon corporations,

provides

> (h)  *Serving a Corporation, Partnership, or Association*. Unless federal law
> provides otherwise or the defendant's waiver has been filed, a domestic or foreign
> corporation, or a partnership or other unincorporated association that is subject to
> suit under a common name, must be served:
> > (1) in a judicial district of the United States:
> > > (A) in the manner prescribed by Rule 4(e)(1) for serving an
> > > individual; or
> > > (B) by delivering a copy of the summons and of the
> > > complaint to an officer, a managing or general agent, or any other
> > > agent authorized by appointment or by law to receive service of
> > > process and--if the agent is one authorized by statute and the
> > > statute so requires--by also mailing a copy of each to the
> > > defendant; . . .

*Id.*

The court therefore turns to Nevada law concerning service of process on individuals as

directed by Fed. R. Civ. P. 4(e)(1) for Kendrick Brown and Jasmine Ewing White and as

directed by Fed. R. Civ. P. 4(h)(1)(A) for the entity Defaulting Defendants since the managing

officer for each was not personally served.  Nev. R. Civ. P. 4(d) provides

(d) Summons: Personal Service.  The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made by delivering a copy of the summons attached to a copy of the complaint as follows: . . .

      (6) Service Upon Individuals.  In all other cases to the defendant personally, or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process.

*Id.*

As noted, Kendrick Brown and the entity Defaulting Defendants were served by leaving a copy of the summons and complaint with the son of Kendrick Brown who is between 14 and 20 years of age. The effectiveness of the service, therefore, depends on in the definition of "suitable age."  A review of Nevada law and application notes to Rule 4 provide no guidance.  It seems apparent to this court, however, that a minor cannot be considered a person of "suitable age" since a minor cannot be served at all as an individual.  *See* Fed. R. Civ. P. 4(e) (" an individual– other than a minor, . . . may be served in a judicial district of the United States . . .") (emphasis added).   It is illogical to conclude that a minor could receive on another's behalf what he himself could not receive individually.  Nevada state statutes provide that the age of majority is 18 years.  N.R.S. § 129.010.[2]

---

[2]  Colorado's service of process Rule is explicit in this regard.  It provides, "Personal service shall be as follows: (1) Upon a natural person whose age is eighteen years or older by delivering a copy thereof to the person, or by leaving a copy thereof at the person's usual place of abode, *with any person whose age is eighteen years or older* and who is a member of the person's family . . ." (emphasis added).  Colorado has obviously defined a "suitable age" to receive service of process on behalf of another as eighteen years.

The age of the person residing in the abode of Kendrick Brown named Kendrick Brown Jr. was described as approximately 14 to 20 years of age.   Based on numbers alone, the statistical probability is that Kendrick Brown, Jr. is a minor.[3]   Therefore, this court cannot determine whether service was affected upon a "person of suitable age and discretion" as required by the Nevada Rules of Civil Procedure. The plaintiffs do not address this issue in either their Motion for Entry of Default [Doc. No. 29] or in their Motion for Default Judgment and do not, for instance, include as one of their multitude of exhibits a birth certificate or other proof of  Kendrick Brown, Jr.'s age.

Therefore, this court finds that the Entry of Default as to Defendants Legal Aide Inc., Legal Aid Low Cost Services Inc., Legal Aide Divorce Services, Inc., Legal Support Services Corp., d/b/a/ Legal Aid Support Services, Inc.,  Legal Aid National Services, d/b/a The LANS Corp. and  Kendrick Brown a/k/a Kendrick White was improvidently entered and should be set aside.  As a result, the "Plaintiffs' Motion for Default Judgment" as to these defendants should be denied as moot.

A similar infirmity does not plague service upon Defendant Jasmine Ewing White.  This court finds that service by leaving a copy of the summons and complaint at the abode of Jasmine Ewing White with her adult sister is proper pursuant to Nevada Rule 4 and Fed. R. Civ. P. 4.

---

[3] Ages 14, 15, 16 and 17 would be a minor, ages 18, 19 and 20 would be an adult.

### B.       Default Judgment for Injunctive Relief Against Jasmine Ewing White.

This court now considers the factual showings made by the plaintiffs as to both liability

and damages against Jasmine Ewing White to determine if they are legally sufficient to entitle

the plaintiffs to relief requested.   *United States Sec. and Exch. Comm'n v. Icon World Corp.*,

2009 WL 922065, *1  (D. Colo. 2009).  Having defaulted, Defendant Jasmine Ewing White has

admitted the truth of the averments of fact pled in the complaint other than those relating to

damages.  *See* Fed. R. Civ. P. 8(d); *see also Burlington Northern Railroad Co. v. Huddleston*, 94

F.3d 1413, 1415 (10th Cir. 1996); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY

KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 at 58-59 (3d ed.1998); *Sec. and Exch.*

*Comm'n v. Capital Holdings, L.L.C.,* 2008 WL 5381461, *2 (D. Colo. 2008).

Plaintiffs request relief only in the form of entry of a permanent injunction against the

defendant. The mere entry of default pursuant to Fed. R. Civ. P. 55(a) does not answer the

question whether any particular remedy is available and appropriate.  *See e360 Insight v. The*

*Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007);  *Sec. and Exch.Comm'n v. Pros Int'l, Inc.*,

994 F.2d 767, 769 (10th Cir. 1993) ("An injunction based on the violation of securities laws is

appropriate if the SEC demonstrates a reasonable and substantial likelihood that the defendant, if

not enjoined, will violate securities laws in the future.")   Determining the likelihood of future

violations "requires analysis of several factors, such as the seriousness of the violation, the

degree of scienter, whether defendant's occupation will present opportunities for future

violations and whether defendant has recognized his wrongful conduct and gives sincere

assurances against future violations." *Id.*

Plaintiffs allege that Kendrick Brown a/k/a Kendrick White and others have, since 1995, engaged in a scheme to pose as "Legal Aid" organizations in order to wrongfully extract money from individuals in need of legal assistance.  Plaintiffs allege, in a conclusory manner, that Ewing White, Kendrick Brown's wife, joined and participated in the fraudulent scheme through participation in the operation of Legal Aid National Services, d/b/a The LANS Corp..  (Compl. at ¶ 24.)  Although there is information contained in the Complaint and in the plaintiffs' Motion concerning Legal Aid National Services, d/b/a The LANS Corp., other than on the caption, the mailing certification and paragraph 24 of the Complaint, Jasmine Ewing White is never mentioned by name again in either the Complaint or the Motion for Default Judgment.  There is likewise no further mention that "White's wife" or "White's spouse" specifically participated in any activity.

The sole evidence of any participation in any activity by Jasmine Ewing White supporting entry of judgment against her appears in the form of an exhibit, appended to another exhibit, attached to the plaintiffs' motion and characterized as the redacted sworn statement of Jasmine Ewing White provided to the State of Colorado Attorney General's Office on December 28, 2007.  (Mot., Exh. 10 to Alexander Decl. [Doc. No. 111-14](hereinafter "Ewing Statement".)  Apparently, Ewing White was subpoenaed as a witness in furtherance of an Attorney General's investigation into Legal Aid National Services, Legal Aid National Paralegal Services, and certain individuals concerning the violation of "the CCPA."  (Ewing Stmt. at 4.)  The Ewing Statement was given under the promise of criminal immunity.  (*Id.* at 6.)

Ewing White stated that she worked as an employee of LANS and that she set up accounts for clients procured by White for LANS to do "document preparation services" since "we're not attorneys." (*Id.* at 16.)  She also performed filing and other clerical functions.  (*Id.*) She characterized her duties as, "I would come in and just do things here and there really for him [White].  And really it was stupid stuff, run errands, go get his lunch, just thing like that, not too much with the company, because I didn't agree to the way that things were being done." (*Id.* at 23-24.)  She stated that the employees of LANS, at White's direction, were careful to draw the "fine line between giving legal advice and not giving legal advice . . . ." (*Id.* at 18.)  She stated that she would not modify any document or agreement which she thought had been drafted originally by an attorney.  (*Id.* at 22.)  When Ewing White had questions on legal issues, she consulted Jennifer Krull and Steve Baca who she claimed were attorneys working with LANS in Denver, Colorado.  (*Id.* at 27.)  When Ewing White could not answer a question from a client in her role as a paralegal, Ewing White claimed she would tell the client, "You know, you might want to call an attorney and consult with an attorney, because I can't answer that."  (*Id.* at 28.) LANS dealt mostly with document preparation in the area of divorce and child custody.  (*Id.*)

Ewing White incorporated Legal Aid Divorce Services as a "documentation preparation company."  (*Id.* at 29.)  She stated she "never really got [her] company off the ground." (*Id.* at 30.)  Mark Meade helped her on one account through her company  (*id.* at 33) and was the primary person drafting the documentation.  (*Id.* at 43.)  Ewing White stated that she always kept her bank account for her company in good standing.  (*Id.* at 36.)   Ewing White advertised her business with an ad in Thrifty Nickle and with flyers, all designed by White.  (*Id.* at 39-41.)

11

Ewing White said that several attorneys worked with White at LANS but she is not sure they reviewed everything. (*Id.* at 44.) She named a number of attorneys on the same floor or office space as LANS, some of whom worked with LANS. (*Id.* at 47-50, 54-59.) She claimed that with respect to LANS, White was careful to ensure that the people answering LANS' telephone understood they could not give legal advice to callers. (*Id.* at 67.) Ewing White stated that she knew "things that he [White] hasn't done right. But then again, some of the things that he's been accused of are not true." (*Id.* at 74.) Ewing White stated that Legal Aid Paralegal Services was a company owned by White's brother Derrich Brown and she had nothing to do with it. (*Id.* at 80.) White had 100-200 different telephone numbers which all fed into one 800 number to be answered. (*Id.* at 91.) Ewing White stated that between White's companies and his brother's company, only White's had attorneys working with them so if someone needed an attorney, the LANS person answering a phone call "would refer the attorney clients over to the LANS Corp because we did at the time have plenty of attorneys to help the clients in most of the states." (*Id.* at 111.) She claimed that White was planning on setting up a replacement company for LANS with non-profit status and that he was using other people's names to set up the corporation. (Id. at 76.) She was aware that White used several alias names. (*Id.* at 38.) Whatever company White set up would have 'Legal Aid' in the name. (*Id.* at 77.) Most of White's businesses have post office box addresses. (*Id.* at 107.) Ewing White stated that White used the money generated by the businesses to pay expenses of the businesses, but that there was often not enough money to pay all the employees. (*Id.* at 85.) He also made payments to his ex-wife and

12

children through the business accounts.  (*Id.* at 86.)  She stated White would often pay expenses

and bills to others before he would pay himself any money.  (*Id.* at 87.)

   Ewing White claims that since LANS closed, White asked her to go to the office to box

up all the "cases, the employee files, move the desks and just move everything . . . to a storage"

in Colorado.  (*Id.* at 95.)  At the end, in September, Ewing White told White, "I can't be a part of

this.  I put in all these hours, I work hard.  You don't pay me.  I can't be a part of this.  Something

is not right here."  (*Id.* at 114.)  She claims she did an audit of some of the client files and called

clients and made sure "that the file gets taken care of and it [the initial paperwork] gets to where

it's supposed to be."  (*Id.* at 115.)  She said she tried "to stay on top of people that had already

paid, so that they could get what they already paid for."  (*Id.* at 116.)

   Probably the most incriminating statement of the interview involved Ewing White's

purported advisement to White's ex-wife, Patricia Nielson, that Nielson "did not know

everything that's going on" and that Ewing White "broke it down to her, I let her know,

whatever you do, do not become affiliated with him [White] in any way, shape or form, other

than the kids."  (*Id.* at 118).  Ewing White stated, "She knows how I operate, so it's not [that] she

doesn't believe me . . . with him staying at her house, it's like he's making her a part of this . . .

."  (*Id.* 118-119.)

   As noted in District Court Judge Marcia Krieger's Order dated February 10, 2009, [Doc.

No. 103] (hereinafter "Krieger Order") the Complaint alleges 12 causes of action, all of which

are alleged collectively against "Defendants" without any further differentiation.  Judge Krieger

characterizes the claims as:

(I) a claim under the civil provisions of the Racketeer Influenced and Corrupt
Organizations ("RICO") Act, 18 U.S.C. § 1961 et seq., in that the Defendants
collectively have engaged in a criminal enterprise through numerous acts of wire
fraud; (ii) a claim that each Defendant has committed trademark infringement in
violation of the Lanham Act, 15 U.S.C. § 1125(a), by infringing upon unspecified
service marks held by the Plaintiffs; (iii) a claim for false advertising in violation
of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) & (B), in that misleading
statements made by the Defendants in the course of their advertising have inured
to the injury of the Plaintiffs; (iv) unfair competition in violation of the Lanham
Act, 15 U.S.C. § 1125(a), in that the Defendants have falsely designated the
origin of their services to the injury of the Plaintiffs; (v) unfair competition under
Colorado common law, in that the Defendants have used service names that are
confusingly similar to the Plaintiffs' service names; (vi) violation of the Texas
Anti-Dilution Act, Tx. Bus. & Com.§ 16.29, for essentially the same reasons; (vii)
trademark infringement under Texas common law, for essentially the same
reasons as the federal trademark infringement claim; (viii) unfair competition
under Texas common law, for essentially the same reasons as the same claim
under Colorado law; (ix) violation of the Colorado Consumer Protection Act,
C.R.S. § 6-1-101 et seq., for essentially the same reasons stated in the other
claims in this action; (x) tortious interference with prospective business relations
under Colorado common law, in that the Defendants improperly induced potential
clients of the Plaintiffs not to enter into relations with the Plaintiffs; (xi) tortious
interference with prospective business relations under Texas common law, for
essentially the same reasons; and (xii) with regard to Defendant Mead,
unauthorized practice of law under Texas common law.

Krieger Order at 2-3.

Again, as noted by Judge Krieger when analyzing the claims against former Defendants

Mead and Minzer, a complaint must give the defendants fair notice of the claim and the grounds

upon which it rests.  (*Id.*)  It need not contain detailed factual allegations, but at the same time,

the plaintiffs cannot merely supply "labels and conclusions" or a "formulaic recitation of the

elements of a cause of action."  (*Id.*) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955,

1964-65 (2007).  Judge Krieger noted that in *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir.

2008), the Tenth Circuit stated that in § 1983 cases, where defendants often include both legal

entities and individual actors, "it is particularly important . . . that the complaint make clear

exactly who is alleged to have done what to whom, to provide each individual with fair notice as

to the basis of the claims against him or her, as distinguished from collective allegations" against

the entities and that when a plaintiff uses the collective term "defendants" to refer to a variety of

entities and individuals without distinction among the various defendants, "it is impossible for

any of these individuals to ascertain what particular[ ] acts they are alleged to have committed."

(*Id.* at 5-6) (citing *Robbins*, at 1249-50).

In the Complaint as set forth *infra*, Ewing White is mentioned in the caption, the

certificate of mailing and in paragraph 24 where the sole allegation is that as White's wife, she

"joined and participated in the scheme."  The Complaint does not state facts giving rise to such a

conclusion and certainly does not state precisely what Ewing White is alleged to have done, nor

who she is alleged to have done it to.  The allegation is completely conclusory in nature and is

not entitled to any presumption of truth or admission. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct.

1937, 1949-51 (2009).  For the same reasons set forth by Judge Krieger with respect to the

claims against former Defendant Minzer, the Complaint utterly fails to give Ms. Ewing White

"fair notice of the particular claims that are asserted against her, much less some indication of

the grounds upon which the Plaintiffs level those claims . . . ." and Ms. Ewing White would have

been entitled to dismissal of the claims against her pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6)

had such a motion been brought.[4]  (Krieger Order at 11.)

---

[4] This court notes that Judge Krieger allowed the plaintiffs additional time to file an
Amended Complaint to address the pleading deficiencies of the original Complaint.  The

Given the entry of default in this case, however, the court also accepts the undisputed facts set forth in the affidavits and exhibits presented by the plaintiffs. *Deery American Corp. v. Artco Equipment Sales, Inc.*, 2007 WL 437762 (D. Colo. 2007). So, while the Complaint sets forth absolutely no viable claim against Ewing White, the court will also examine the admissions in the Ewing Statement in making a determination as to whether judgment should be entered against her.

The court finds that the sworn statements of Ewing White are those of a person recognizing that Kendrick White was not always careful about the line between legal document preparation and the actual practice of law. Although she admits to knowledge, in a vague way, that everything White was doing was "not right," none of her admissions support complicity in specific wrongdoing. In fact, it appears from the admissions in the Ewing Statement that, Ewing White was attempting to ensure that documents clients asked to have prepared were actually completed and that the clients who needed to receive legal advice were directed to an attorney on contract. Clearly, Ewing White acted at the direction of White – which does not exonerate her from illegal or improper activities – however, no illegal activities were admitted in her sworn statement, especially in light of the utter failure of the Complaint. There are no undisputed facts supporting that Ewing White was knowingly engaging in the unauthorized practice of law and, in fact, the admissions in the sworn statement clearly indicate an intent not to do so and to ask the staff attorneys should the need for legal advice or knowledge arise.

---

plaintiffs did not file an Amended Complaint.

16

Standing alone as the sworn statement does, without even a single viable allegation of fact in the Complaint, this court cannot conclude that the unchallenged facts before the court constitute a legitimate basis for the entry of a judgment on any of the multitude of claims which appear to have been asserted against her collectively as one of  "the Defendants."

Wherefore, this court **RECOMMENDS**

1.      "Plaintiffs' Motion for Default Judgment" [Doc. No. 111] be DENIED as to Defendants Legal Aide Inc., Legal Aid Low Cost Services Inc., Legal Aide Divorce Services, Inc., Legal Support Services Corp., d/b/a/ Legal Aid Support Services, Inc.,  Legal Aid National Services, d/b/a The LANS Corp., Kendrick Brown (a/k/a Kendrick White) and Jasmine Ewing White; and

2.      The Clerk's Entries of Default against Defendants Legal Aide Inc., Legal Aid Low Cost Services Inc., Legal Aide Divorce Services, Inc., Legal Support Services Corp., d/b/a/ Legal Aid Support Services, Inc.,  Kendrick Brown (a/k/a Kendrick White) [collectively Doc. No. 34] and against Legal Aid National Services, d/b/a The LANS Corp. [Doc. No. 35] be VACATED and SET ASIDE.

## ADVISEMENT TO THE PARTIES

**Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis**

for the objection will not preserve the objection for *de novo* review.  "[A] party's objections

to the magistrate judge's report and recommendation must be both timely and specific to

preserve an issue for de novo review by the district court or for appellate review."  *United*

*States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, **73**

**F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar** *de novo*

review by the District Judge of the Magistrate Judge's proposed findings and

recommendations and will result in a waiver of the right to appeal from a judgment of the

district court based on the proposed findings and recommendations of the magistrate

judge.  *See Vega v. Suthers*, **195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision**

to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, **73**

**F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and**

recommendation must be both timely and specific to preserve an issue for *de novo* review

by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v.*

*Wyoming Coal Refining Systems, Inc*., **52 F.3d 901, 904 (10th Cir. 1995) (by failing to object**

to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to

appeal those portions of the ruling); *Ayala v. United States*, **980 F.2d 1342, 1352 (10th Cir.**

**1992) (by their failure to file objections, plaintiffs waived their right to appeal the**

**Magistrate Judge's ruling).**  *But*

*see, Morales-Fernandez v. INS***, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does**

**not apply when the interests of justice require review).**

Dated this 21st day of August, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge

19