IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00258-MSK-KMT

COLORADO LEGAL SERVICES, and
TEXAS RIOGRANDE LEGAL AID, INC.,

      Plaintiffs,

v.

LEGAL AID NATIONAL SERVICES, d/b/a THE LANS CORP.,
ED BROWN MANAGEMENT, INC.,
LEGAL AIDE INC.,
LEGAL AID LOW COST SERVICES INC.,
LEGAL AIDE DIVORCE SERVICES, INC.,
LEGAL SUPPORT SERVICES CORP. d/b/a LEGAL AID SUPPORT SERVICES, INC.,
P.I. INTERNATIONAL, CORP.,
KENDRICK BROWN, and
JASMINE EWING WHITE,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Kathleen M. Tafoya**
**United States Magistrate Judge**


      This matter is before the court on "Plaintiffs' Motion for Default Judgment" ("Motion")

[Doc. No. 111, filed April 15, 2009].  Plaintiffs seek a default judgment against Defendants

Legal Aide Inc., Legal Aid Low Cost Services Inc., Legal Aide Divorce Services, Inc., Legal

Support Services Corp., d/b/a/ Legal Aid Support Services, Inc., and Legal Aid National

Services, d/b/a The LANS Corp. ("LANS"), Kendrick Brown (a/k/a Kendrick White) ("White"),

and Jasmine Ewing White ("Ewing White") (hereinafter collectively "Defaulting Defendants") for permanent injunctive relief.

### Procedural History

The Complaint in this matter was filed on February 7, 2008.  (Compl. [Doc. No. 1]). Service of the summons and complaint was made on White individually on February 23, 2009, by delivering a copy of the summons and complaint to Kendrick Brown, Jr., the son of White, at 2600 S. Town Center Drive, #2129, Las Vegas, Nevada, White's residence or abode.  [Doc. No. 7.]  Kendrick Brown, Jr. was described by the process server, Jeannie Smith, as a "Senior High School SON . . . Sex M, Age 18 . . . ." [Doc. No. 118-4.]  Service was made on Legal Aide Inc. [Doc. No. 11], Legal Aid Low Cost Services Inc. [Doc. No. 8], Legal Aide Divorce Services, Inc. [Doc. No. 10], Legal Aid National Services, d/b/a The LANS Corp.  [Doc. No. 9], and Legal Support Services Corp., d/b/a/ Legal Aid Support Services, Inc. [Doc. No. 12] on February 23, 2009 also by leaving a copy of the summons and complaint for each entity with Kendrick Brown, Jr., the son of White, at 2600 S. Town Center Drive, #2129, Las Vegas, Nevada, White's residence or abode.  Jasmine Ewing White was served by leaving a copy of the summons and complaint with Ewing White's adult female sister at 8000 Badura Ave, Apt. 1168, Las Vegas, Nevada, Ewing White's residence or abode, on February 25, 2008.  [Doc. No. 14.] All entities and the two individuals were served by a representative of Legal Process Service, License 604, of Las Vegas, Nevada.

The Complaint alleges that 1) Legal Aide Inc. is a Colorado corporation with a principal place of business in Lone Tree, Colorado and that Sandra Forbs is the registered agent at the

2

same business address, 2) Legal Aid Low Cost Services Inc. is a Colorado corporation with a principal place of business in Littleton, Colorado and that White is the registered agent at the same business address, 3) Legal Aide Divorce Services, Inc. is a Colorado corporation with a principal place of business in Denver, Colorado 80210 and that Eric Jones (a known alias of White) is the registered agent at a Lone Tree, Colorado address, 4) Legal Aid National Services, Inc. (d/b/a The LANS Corp., and/or Legal Aid Housing Development) is a Colorado nonprofit corporation with a principal place of business in Aurora, Colorado and that White is the registered agent; and, 6) Legal Support Services Corp. (d/b/a Legal Aid Support Services, Inc.) is a Colorado corporation with a principal place of business in Denver, Colorado and that White is the registered agent at a different Denver, Colorado address.

Fed. R. Civ. P. 12(a) provides, "[u]nless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows: (A) A defendant must serve an answer: (i) within 20[1] days after being served with the summons and complaint."  Answers were due on March 14, 2008 for all the Defaulting Defendants except for Jasmine Ewing White, whose Answer was due on March 17, 2008.  None of the Defaulting Defendants has filed an Answer or other responsive pleading as of the date of this Recommendation and the time for such filing has long passed.

---

[1] The Rule will be amended to read "21 days" effective December 1, 2009, absent contrary Congressional action.  The change of the time limitation is irrelevant under the facts of this case.

Plaintiffs moved for Clerk's Entry of Default against these defendants[2] on April 7, 2008. [Doc. No. 29.]  The Motion for Entry of Default was mailed to Ewing White at 8000 Badura Avenue, Apt 1168, Las Vegas, NV 89113 and to White at 2600 S. Town Center Drive, #2129, Las Vegas, NV 89135.  The mail to both White and Ewing White was returned to the court as undeliverable on April 21, 2008.  [Doc. Nos. 37 and 38.]

The plaintiffs, through declaration of J. Alexander Lawrence, have affirmed that neither White nor Ewing White is an infant or an incompetent person, nor are White or Ewing White members of the military.  (Declaration of J. Alexander Lawrence in Support of Plaintiffs' Motion for Default Judgment, hereinafter "Alexander Decl." [Doc. No. 111-4] at ¶¶ 16 and 17.)

The Clerk entered default against White, Ewing White and Legal Aide Inc.,  Legal Aid Low Cost Services Inc.,  Legal Aide Divorce Services, Inc., and  Legal Support Services Corp., d/b/a/ Legal Aid Support Services, Inc. on April 11, 2009 [Doc. No. 34] and as to  Legal Aid National Services, d/b/a The LANS Corp. on April 16, 2009 [Doc. No. 35].

This court originally filed a Report and Recommendation in this matter on August 21, 2009.  [Doc. No. 117.]  Thereafter the Plaintiffs filed an objection [Doc. No. 118] providing new information about the service of process on Kendrick Brown, Jr.. [Doc. No. 118, Exh. 1 and Exh. 2.]  Based on that new information, I withdrew my August 21, 2009 Report and Recommendation on September 15, 2009.  [Doc. No. 119.]

---

[2]  Plaintiffs also moved for entry of default against Ed Brown Management, Inc.

*Legal Standard*

Default judgment may be entered against a party who fails to appear or otherwise defend

pursuant to Fed. R. Civ. P. 55.  Pursuant to Fed. R. Civ. P. 55(b)(2), judgment by default may be

entered

> By the Court. In all other cases the party entitled to a judgment by default shall
> apply to the court therefor; but no judgment by default shall be entered against an
> infant or incompetent person unless represented in the action by a general
> guardian, committee, conservator, or other such representative who has appeared
> therein. If the party against whom judgment by default is sought has appeared in
> the action, the party (or, if appearing by representative, the party's representative)
> shall be served with written notice of the application for judgment at least 3 days
> prior to the hearing on such application. If, in order to enable the court to enter
> judgment or to carry it into effect, it is necessary to take an account or to
> determine the amount of damages or to establish the truth of any averment by
> evidence or to make an investigation of any other matter, the court may conduct
> such hearings or order such references as it deems necessary and proper and
> accord a right of trial by jury to the parties when and as required by any statute of
> the United States.

*Id.*

"[A] party is not entitled to a default judgment as of right; rather the entry of a default

judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of Southern*

*Connecticut, Limited Partnership v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001); *Deery*

*American Corp. v. Artco Equipment Sales, Inc.*, 2007 WL 437762, *2  (D. Colo. 2007).  Even

after default, "it remains for the court to consider whether the unchallenged facts constitute a

legitimate basis for the entry of a judgment" since a party in default does not admit conclusions

of law.  *See McCabe v. Campos*, 2008 WL 576245, *2 (D. Colo. 2008) (citing *Black v. Lane*, 22

F.3d 1395, 1407 (7th Cir. 1994)).  In determining whether a claim for relief has been established,

5

the well-pleaded facts of the complaint are deemed true. *Vibe Technologies, LLC v. Suddath*, 2009 WL 2055186, *1  (D. Colo. 2009) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).  *See also DIRECTV, Inc. v. Bloniarz*, 336 F. Supp. 2d 723, 725 (W.D. Mich. 2004) ("It is well-established that once a default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability."). In addition, the court accepts the undisputed facts set forth in the affidavits and exhibits. *Id.*

### Analysis

The claims in this matter were brought pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; the Lanham Act, 15 U.S.C. § 1125(a) (federal statutory trademark infringement and unfair competition); 15 U.S.C. § 1125(a)(1) (federal false advertising or promotion); and state statutes and common law. (Compl. at 2.)   This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks); and 28 U.S.C. § 1367 (supplemental jurisdiction). Venue for this action is appropriate pursuant to 28 U.S.C. § 1391(b)(2).

### A.    Service of Process

Fed. R. Civ. P. 4(e)(1) states that an individual may be served

(e) Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; **or**
>
> (2) doing any of the following:
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

(*Id.*)  Both White and Ewing White were served pursuant to Rule 4(e)(2)(B).

Kendrick Brown, Jr. accepted service both for his father individually and the various companies at the home he shared with his father, White.  "While 'there is a relative dearth of published opinions defining the contours of 'suitable discretion,' . . . it is clear that the amount of discretion necessary to satisfy the rule is rather low.'"  *Perkins v. Johnson*, No. 06-cv-01503-REB-PAC, 2008 WL 275768, at *3 (D. Colo.  Jan. 29, 2008) (unpublished opinion) (quoting *Flowers v. Klatick*, No. 93 C 6606, 2004 WL 2005814, at *2 (N.D. Ill. Sept. 1, 2004). *See also United Servs. Auto Ass'n v. Barger*, 910 F.2d 321, 324 (6th Cir. 1990) (thirteen-year-old son was of suitable age and discretion to effect service); *United States v. Persaud*, 235 F.R.D. 696, 698 (M.D. Fla. 2005) (service on 15-year-old daughter effective); *DeGeorge v. Mandata Poultry Co.*, 196 F. Supp. 192, 193 (E.D. Pa. 1961) (16-year-old girl of suitable age to accept service); *Holmen v. Miller*, 206 N.W.2d 916, 919-20 (Minn. 1973) (thirteen-year-old daughter was of suitable age).  As to service on White individually, I find that as a senior in high school of the approximate age of 18, Kendrick Brown, Jr. is a person of suitable age and discretion and

service upon White was, therefore, proper.  I further find that service upon Jasmine Ewing

White's adult sister at Ewing White's residence was also proper as to Ewing White individually.

Fed. R. Civ. P. 4(h), concerning proper service upon corporations, provides

(h)  *Serving a Corporation, Partnership, or Association*. Unless federal law
provides otherwise or the defendant's waiver has been filed, a domestic or foreign
corporation, or a partnership or other unincorporated association that is subject to
suit under a common name, must be served:

(1) in a judicial district of the United States:
        (A) in the manner prescribed by Rule 4(e)(1) for serving an
individual; or
        (B) by delivering a copy of the summons and of the
complaint to an officer, a managing or general agent, or any other
agent authorized by appointment or by law to receive service of
process and--if the agent is one authorized by statute and the
statute so requires--by also mailing a copy of each to the
defendant; . . .

*Id.*  Legal Aide Inc.,  Legal Aid Low Cost Services Inc.,  Legal Aide Divorce Services, Inc.,

Legal Aid National Services, d/b/a The LANS Corp., and  Legal Support Services Corp., d/b/a/

Legal Aid Support Services, Inc. were not served by leaving a copy of the summons and

complaint on an officer or agent of the companies.  Therefore, service upon those companies

must be in accordance with Rule 4(h)(1)(A) and its directive to Rule 4(e)(1) requiring service by

following the law of the state in which the process was served or where the district court is

located, in this case, Colorado.

Nev. R. Civ. P. 4(d) provides

(d) Summons: Personal Service.  The summons and complaint shall be served
together. The plaintiff shall furnish the person making service with such copies as
are necessary. Service shall be made by delivering a copy of the summons
attached to a copy of the complaint as follows: . . .

8

(6) Service Upon Individuals.  In all other cases to the defendant personally, or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process.

*Id.*  Having found Kendrick Brown, Jr. to be a person of suitable age and discretion and having found that service was made at White's residence, I find that service was also proper as to Legal Aide Inc.,  Legal Aid Low Cost Services Inc.,  Legal Aide Divorce Services, Inc., Legal Aid National Services, d/b/a The LANS Corp., and  Legal Support Services Corp., d/b/a/ Legal Aid Support Services, Inc.

> **B.**      ***Default Judgment for Injunctive Relief Against Kendrick Brown a/k/a Kendrick White and Legal Aide Inc., Legal Aid Low Cost Services Inc., Legal Aide Divorce Services, Inc., Legal Aid National Services, d/b/a The LANS Corp., and Legal Support Services Corp., d/b/a/ Legal Aid Support Services, Inc.***

This court now considers the factual showings made by the plaintiff as to both liability and damages against White and Legal Aide Inc., Legal Aid Low Cost Services Inc., Legal Aide Divorce Services, Inc., Legal Aid National Services, d/b/a The LANS Corp., and Legal Support Services Corp., d/b/a/ Legal Aid Support Services, Inc. to determine if they are legally sufficient to entitle the plaintiffs to the injunctive relief requested.  *United States Sec. and Exch. Comm'n v. Icon World Corp.*,  2009 WL 922065, *1  (D. Colo. 2009).  Having defaulted, White and his entity defendants have admitted the truth of the averments of fact pled in the complaint other than those relating to damages.  *See* Fed. R. Civ. P. 8(d); *see also Burlington Northern Railroad Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir. 1996); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688 at 58-59 (3d

ed.1998).  *Sec. and Exch. Comm'n v. Capital Holdings, L.L.C.,* 2008 WL 5381461, *2 (D. Colo. 2008).

The mere entry of default pursuant to Fed. R. Civ. P. 55(a) does not answer the question whether any particular remedy is available and appropriate.  *See e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007).  Plaintiffs request relief only in the form of entry of a permanent injunction against the defendants.  "An injunction based on the violation of securities laws is appropriate if the SEC demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future."  *Sec. and Exch.Comm'n v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (10th Cir. 1993).  Determining the likelihood of future violations "requires analysis of several factors, such as the seriousness of the violation, the degree of scienter, whether defendant's occupation will present opportunities for future violations and whether defendant has recognized his wrongful conduct and gives sincere assurances against future violations."  *Id.*

The Lanham Act provides that "any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -- in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(B).

To bring a civil RICO claim, a plaintiff must allege that he was "injured in his business or property" by the RICO violation. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496,(1985); Title 18 U.S.C. § 1962.  A RICO violation requires: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (footnote omitted). A pattern of racketeering activity requires at least two acts of racketeering activity.  See 18 U.S.C. § 1961(5).

Plaintiffs allege that White and others have, since 1995, engaged in a scheme to pose as "Legal Aid" organizations in order to wrongfully extract money from individuals in need of legal assistance.  (Compl., Doc. No. 1., ¶ 37.)  The factual averments of the Complaint allege that White, through his various entities, utilized public websites, advertisements, the internet, and nationwide telephone directories (including in, among other states, Colorado and Texas) and purposefully used the Legal Aid name to cause confusion as to its affiliation with legitimate Legal Aid organizations. (Compl. ¶¶ 8, 45 - 52.)  Plaintiffs allege that White used "expansion lines," enabling them to have local numbers listed throughout the country that automatically connected the callers to one of White's Colorado businesses.   (See Affidavit of J. Alexander Lawrence, [Doc. No. 111-4] [hereinafter "Lawrence Decl."], Ex. 9, 94:14-97:25.)   Individuals in need of legal services anywhere in the United States, some of whom are set forth in the complaint, (Compl. ¶¶ 88-467), would dial what they thought were local Legal Aid numbers, and be connected to a recording from LANS, and then transferred to LANS's office in Colorado. (Lawrence Decl. Ex. 9, 95:14-97:14.)   When those calls were transferred to LANS's Colorado offices—they were transferred to "intake specialists" —employees hired not for legal knowledge, qualifications, or experience, but instead hired because they were "good sales

people." (Lawrence Decl. Ex. 22 at 41:6-43:1.)  The Complaint details instances in which

consumers attempting to contact Plaintiffs Colorado Legal Services ("CLS") or Texas Rio Grand

Legal Aid, Inc. ("TRLA") but mistakenly contacted LANS or another of White's entities. (See,

e.g., Compl. ¶¶ 210-233; 297-327). The Complaint sets forth an instance where a consumer

visited TRLA's offices to complain about the services she was receiving, only to be told that she

had not been communicating with anyone from TRLA and had, in fact, been communicating

with, and paying, LANS. (Compl. ¶ 295.)

The Complaint also alleges that White, through his entities, falsely held the entities out as

licensed providers of legal services, by making false representations about its services, and by

using the term "Legal Aid" to mislead consumers as to its affiliation with others and otherwise

engaged in deceptive trade practices in violation of the Colorado Consumer Protection Act,

Colo. Rev. Stat. § 6-1-101, et seq. (2008) ("CCPA").  White was not a licensed attorney.  In the

Complaint, Plaintiffs set out more than a dozen specific incidents in which LANS defrauded

consumers (Compl. ¶¶ 87-467).  The Complaint sets out examples of White and his

organizations specifically targeting relatively unsophisticated consumers with limited financial

means. (Compl. ¶ 44.)

In order to prove a claim for false advertising, a plaintiff must demonstrate that (1) the

defendant made material false or misleading representations of fact in connection with

commercial advertising or promotion of its product, (2) in commerce, (3) that is likely to cause

confusion as to origin, association, or approval of the goods or services or the characteristics of

the goods or services, and (4) injure the plaintiff. *World Wide Ass'n of Specialty Programs v.*

12

*Pure, Inc.*, 450 F.3d 1132, 1140 (10th Cir. 2006).  The Complaint sets forth facts supporting that LANS and the other entities operated an internet website designed to induce consumers to retain its services under the false assumption that it was operating a legitimate Legal Aid organization – a place to receive legal advice and help from attorneys for indigent litigants.  (Compl. ¶ 48.) Further, in advertising on public websites, White and his companies falsely held themselves out as providers of "quality legal assistance" and purported to offer legal services under a variation of the Legal Aid designation. (Compl. ¶ 49, Exh. C.)   LANS maintained local telephone numbers under variations of the Legal Aid designation in telephone directories, including the yellow pages and "411." (Compl. ¶¶ 47,107-108, 218-221, 437-438, 93, 238, 298-300, 366-367, 402-403.)  Plaintiffs allege that LANS's representations in its advertisements and promotional listings were false and misleading because it purported to offer legal services that it was unable or unauthorized to provide. (Compl. ¶ 51.)

Neither LANS nor any of the other White entities were authorized to provide legal services and White has admitted LANS's services were generally done by non-lawyers and were not reviewed by licensed attorneys. (Lawrence Decl. Ex. 9, 54:17-55:18.)   The Complaint also alleges instances where White, through his entities, provided paperwork purported to respond to their legal needs to consumers, however the paperwork was inadequate and rejected by courts. (Compl. ¶ 57,  ¶¶ 436 - 467.)  In addition to collecting fees for legal services they never intended to provide or never intended to provide adequately, White established LANS as a not-for-profit

organization and sought "pledges" from donors to support LANS.[3]  (Lawrence Decl. Exs. 9, 24:4-24:12, 16; Compl. ¶ 52.)  White went so far as to represent that the donations to the fraudulent scheme were tax-deductible. (Lawrence Decl. Ex. 16.)

Plaintiffs claim they were injured in the course of their businesses as a result of White and his companies' deceptive practices. (Compl. ¶ 554.) The Complaint alleges that LANS and other entities controlled by White, undertook various schemes by which they fraudulently induced consumers seeking legal representation to engage their services by using variations of the well-known and trusted "Legal Aid" designation.  (Compl. ¶ 37.)  The Complaint sets forth numerous instances of consumer confusion and it is alleged that this confusion has resulted in irreparable harm to Plaintiffs' goodwill.  (See, e.g., Compl. ¶¶ 210-233; 297-327.)  Plaintiffs claim that they rely on the integrity of the Legal Aid name to effectively render services to their clients, and White's deceptive use of "Legal Aid" in the names of his various entities directly and purposely undercuts Plaintiffs' ability to maintain the public confidence in their services – public confidence which is essential to the services they offer.  (Mot. at 12.)

This court finds that the unchallenged facts contained in the Complaint and in the affidavits and exhibits presented to the court, clearly constitute a legitimate basis for the entry of a judgment against Kendrick White a/k/a Kendrick Brown and Legal Aide Inc., Legal Aid Low

---

[3] The Plaintiffs claim that the Colorado Attorney General's investigation of White and his various entities uncovered bank records showing the scheme had generated nearly $670,000 in verifiable revenues in the two year period from January 2006-January 2008. (Lawrence Decl. Ex. 14 ¶¶ 20, 24.)

Cost Services Inc., Legal Aide Divorce Services, Inc., Legal Aid National Services, d/b/a The

LANS Corp., and Legal Support Services Corp., d/b/a/ Legal Aid Support Services, Inc.

### C.      *Default Judgment for Injunctive Relief Against Jasmine Ewing White.*

Plaintiffs allege, in a conclusory manner, that Ewing White, Kendrick Brown's wife,

joined and participated in the fraudulent scheme through participation in the operation of Legal

Aid National Services, d/b/a The LANS Corp.. (Compl. at ¶ 24.)  Although there is ample

information contained in the Complaint and in the plaintiffs' Motion concerning White and his

various entities, other than on the caption, the mailing certification and paragraph 24 of the

Complaint, Jasmine Ewing White is never mentioned by name again in either the Complaint or

the Motion for Default Judgment.  There is likewise no further mention that "White's wife" or

"White's spouse" specifically participated in any activity.

The sole evidence of any participation in any activity by Jasmine Ewing White

supporting entry of judgment against her appears in the form of an exhibit, appended to another

exhibit, attached to the plaintiffs' motion and characterized as the redacted sworn statement of

Jasmine Ewing White provided to the State of Colorado Attorney General's Office on December

28, 2007.  (Mot., Exh. 10 to Alexander Decl. [Doc. No. 111-14](hereinafter "Ewing Statement".)

Apparently, Ewing White was subpoenaed as a witness in furtherance of an Attorney General's

investigation into Legal Aid National Services, Legal Aid National Paralegal Services, and

certain individuals concerning the violation of "the CCPA."  (Ewing Stmt. at 4.)  The Ewing

Statement was elicited under the promise of criminal immunity.  (*Id.* at 6.)

15

Given the entry of default in this case, however, the court also accepts the undisputed facts set forth in the affidavits and exhibits presented by the plaintiffs.  *Deery American Corp. v. Artco Equipment Sales, Inc.*, 2007 WL 437762 (D. Colo. 2007).  So, while the Complaint sets forth absolutely no viable claim against Ewing White, the court will also examine the admissions in the Ewing Statement in making a determination as to whether judgment should be entered against her.

Ewing White stated she worked as an employee of LANS and that she set up accounts for clients procured by White for LANS to do "document preparation services" since "we're not attorneys." (*Id.* at 16.)  She also performed filing and other clerical functions.  (*Id.*)  She characterized her duties as, "I would come in and just do things here and there really for him [White].  And really it was stupid stuff, run errands, go get his lunch, just thing like that, not too much with the company, because I didn't agree to the way that things were being done." (*Id.* at 23-24.)  She stated that the employees of LANS, at White's direction, were careful to draw the "fine line between giving legal advice and not giving legal advice . . . ." (*Id.* at 18.)  She stated that she would not modify any document or agreement which she thought had been drafted originally by an attorney.  (*Id.* at 22.)  When Ewing White had questions on legal issues, she consulted Jennifer Krull and Steve Baca who she claimed were attorneys working with LANS in Denver, Colorado.  (*Id.* at 27.)  When Ewing White could not answer a question from a client in her role as a paralegal, Ewing White claimed she would tell the client, "You know, you might want to call an attorney and consult with an attorney, because I can't answer that." (*Id.* at 28.)

16

She said that LANS dealt mostly with document preparation in the area of divorce and child custody.  (*Id.*)

Ewing White incorporated Legal Aid Divorce Services as a "documentation preparation company."  (*Id.* at 29.)  She stated she "never really got [her] company off the ground."  (*Id.* at 30.)  Mark Meade helped her on one account through her company  (*id.* at 33) and was the primary person drafting the documentation.  (*Id.* at 43.)  Ewing White stated that she always kept her bank account for her company in good standing.  (*Id.* at 36.)   Ewing White advertised her business with an ad in Thrifty Nickle and with flyers, all designed by White.  (*Id.* at 39-41.) Ewing White said that several attorneys worked with White at LANS but she is not sure they reviewed everything.  (*Id.* at 44.)  She named a number of attorneys on the same floor or office space as LANS, some of whom worked with LANS.  (*Id.* at 47-50, 54-59.)  She claimed that with respect to LANS, White was careful to ensure that the people answering LANS' telephone understood they could not give legal advice to callers.  (*Id.* at 67.)  Ewing White stated that she knew "things that he [White] hasn't done right.  But then again, some of the things that he's been accused of are not true."  (*Id.* at 74.)  Ewing White stated that Legal Aid Paralegal Services was a company owned by White's brother Derrich Brown and she had nothing to do with it.  (*Id.* at 80.)  White had 100-200 different telephone numbers which all fed into one 800 number to be answered.  (*Id.* at 91.)  Ewing White stated that between White's companies and his brother's company, only White's had attorneys working with them so if someone needed an attorney, the LANS person answering a phone call "would refer the attorney clients over to the LANS Corp. because we did at the time have plenty of attorneys to help the clients in most of the states."  (*Id.*

at 111.)  She claimed that White was planning on setting up a replacement company for LANS

with non-profit status and that he was using other people's names to set up the corporation.  (Id.

at 76.)  She was aware that White used several alias names.  (*Id.* at 38.)  Whatever company

White set up would have 'Legal Aid' in the name.  (*Id.* at 77.)   Most of White's businesses have

post office box addresses.  (*Id.* at 107.)  Ewing White stated that White used the money

generated by the businesses to pay expenses of the businesses, but that there was often not

enough money to pay all the employees.  (*Id.* at 85.)  He also made payments to his ex-wife and

children through the business accounts.  (*Id.* at 86.)  She stated White would often pay expenses

and bills to others before he would pay himself any money.  (*Id.* at 87.)

    Ewing White claims that since LANS closed, White asked her to go to the office to box

up all the "cases, the employee files, move the desks and just move everything . . . to a storage"

in Colorado.  (*Id.* at 95.)  At the end, in September, Ewing White told White, "I can't be a part of

this.  I put in all these hours, I work hard.  You don't pay me.  I can't be a part of this.

Something is not right here."  (*Id.* at 114.)  She claims she did an audit of some of the client files

and called clients and made sure "that the file gets taken care of and it [the initial paperwork]

gets to where it's supposed to be."  (*Id.* at 115.)  She said she tried "to stay on top of people that

had already paid, so that they could get what they already paid for."  (*Id.* at 116.)

    Probably the most incriminating statement of the interview involved Ewing White's

purported advisement to White's ex-wife, Patricia Nielson, that Nielson "did not know

everything that's going on" and that Ewing White "broke it down to her, I let her know,

whatever you do, do not become affiliated with him [White] in any way, shape or form, other

18

than the kids." (*Id.* at 118).  Ewing White stated, "She knows how I operate, so it's not [that] she

doesn't believe me . . . with him staying at her house, it's like he's making her a part of this . . .

." (*Id.* 118-119.)

As noted in District Court Judge Marcia Krieger's Order dated February 10, 2009, [Doc.

No. 103] (hereinafter "Krieger Order") the Complaint alleges 12 causes of action, all of which

are alleged collectively against "Defendants" without any further differentiation.  Judge Krieger

characterizes the claims as:

> (I) a claim under the civil provisions of the Racketeer Influenced and Corrupt
> Organizations ("RICO") Act, 18 U.S.C. § 1961 et seq., in that the Defendants
> collectively have engaged in a criminal enterprise through numerous acts of wire
> fraud; (ii) a claim that each Defendant has committed trademark infringement in
> violation of the Lanham Act, 15 U.S.C. § 1125(a), by infringing upon unspecified
> service marks held by the Plaintiffs; (iii) a claim for false advertising in violation
> of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) & (B), in that misleading
> statements made by the Defendants in the course of their advertising have inured
> to the injury of the Plaintiffs; (iv) unfair competition in violation of the Lanham
> Act, 15 U.S.C. § 1125(a), in that the Defendants have falsely designated the
> origin of their services to the injury of the Plaintiffs; (v) unfair competition under
> Colorado common law, in that the Defendants have used service names that are
> confusingly similar to the Plaintiffs' service names; (vi) violation of the Texas
> Anti-Dilution Act, Tx. Bus. & Com.§ 16.29, for essentially the same reasons; (vii)
> trademark infringement under Texas common law, for essentially the same
> reasons as the federal trademark infringement claim; (viii) unfair competition
> under Texas common law, for essentially the same reasons as the same claim
> under Colorado law; (ix) violation of the Colorado Consumer Protection Act,
> C.R.S. § 6-1-101 et seq., for essentially the same reasons stated in the other
> claims in this action; (x) tortious interference with prospective business relations
> under Colorado common law, in that the Defendants improperly induced potential
> clients of the Plaintiffs not to enter into relations with the Plaintiffs; (xi) tortious
> interference with prospective business relations under Texas common law, for
> essentially the same reasons; and (xii) with regard to Defendant Mead,
> unauthorized practice of law under Texas common law.

Krieger Order at 2-3.

Again, as noted by Judge Krieger when analyzing the claims against former Defendants Mead and Minzer, a complaint must give the defendants fair notice of the claim and the grounds upon which it rests.  (*Id.*)  It need not contain detailed factual allegations, but at the same time, the plaintiffs cannot merely supply "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  (*Id.*) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  Judge Krieger noted that in *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008), the Tenth Circuit stated that in § 1983 cases, where defendants often include both legal entities and individual actors, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations" against the entities and that when a plaintiff uses the collective term "defendants" to refer to a variety of entities and individuals without distinction among the various defendants, "it is impossible for any of these individuals to ascertain what particular[ ] acts they are alleged to have committed." (*Id.* at 5-6) (citing *Robbins*, at 1249-50).

In the Complaint as set forth *infra*, Ewing White is mentioned in the caption, the certificate of mailing and in paragraph 24 where the sole allegation is that as White's wife, she "joined and participated in the scheme."  The Complaint does not state facts giving rise to such a conclusion and certainly does not state precisely what Ewing White is alleged to have done, nor who she is alleged to have done it to.  The allegation is completely conclusory in nature and is not entitled to any presumption of truth or admission.  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-51 (2009).  For the same reasons set forth by Judge Krieger with respect to the

claims against former Defendant Minzer, the Complaint utterly fails to give Ms. Ewing White "fair notice of the particular claims that are asserted against her, much less some indication of the grounds upon which the Plaintiffs level those claims . . . ." and Ms. Ewing White would have been entitled to dismissal of the claims against her pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6) had such a motion been brought.[4]  (Krieger Order at 11.)

The court finds that the sworn statement of Ewing White evidences a person who recognizes that White was not always careful about the line between legal document preparation and the actual practice of law.  Although she admits to knowledge, in a vague way, that everything White was doing was "not right," none of her admissions support complicity in specific wrongdoing.  In fact, it appears from the admissions in the Ewing Statement that, Ewing White was attempting to ensure that documents clients asked to have prepared were actually completed and that the clients who needed to receive legal advice were directed to an attorney. Clearly, Ewing White acted at the direction of White – which does not exonerate her from illegal or improper activities – however, no illegal activities were admitted in her sworn statement, especially in light of the utter failure of the Complaint.  There are no undisputed facts supporting that Ewing White was knowingly engaging in the unauthorized practice of law and, in fact, the admissions in the sworn statement clearly indicate an intent not to do so and to ask the staff attorneys should the need for legal advice or knowledge arise.

---

[4] This court notes that Judge Krieger allowed the plaintiffs additional time to file an Amended Complaint to address the pleading deficiencies of the original Complaint.  The plaintiffs did not file an Amended Complaint.

Standing alone as the sworn statement does, without even a single viable allegation of fact in the Complaint, this court cannot conclude that the unchallenged facts before the court constitute a legitimate basis for the entry of a judgment on any of the multitude of claims which appear to have been asserted against her collectively as one of "the Defendants."

Wherefore, this court **RECOMMENDS**

1.      "Plaintiffs' Motion for Default Judgment" [Doc. No. 111] be **GRANTED** as to Defendants Legal Aide Inc., Legal Aid Low Cost Services Inc., Legal Aide Divorce Services, Inc., Legal Support Services Corp., d/b/a/ Legal Aid Support Services, Inc., Legal Aid National Services, d/b/a The LANS Corp., and Kendrick Brown (a/k/a Kendrick White); and

2.      "Plaintiffs' Motion for Default Judgment" [Doc. No. 111] be **DENIED** as to Defendant Jasmine Ewing White; and

3.      Defendants Kendrick Brown (a/k/a Kendrick White) and entities Legal Aide Inc., Legal Aid Low Cost Services Inc., Legal Aide Divorce Services, Inc., Legal Support Services Corp., d/b/a/ Legal Aid Support Services, Inc., and Legal Aid National Services, d/b/a The LANS Corp. be **PERMANENTLY ENJOINED** from

a.      All use of a name that in any way suggests association with a legitimate "Legal Aid" organization; and

b.      Making false and misleading statements about their services.

c.      Falsely holding themselves out as a provider of legal or paralegal services;

d.      Advertising under any name in the yellow pages, in on-line telephone directories, or otherwise that suggests that they provide legal or paralegal services; and

e.      The unauthorized practice of law.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object

23

to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 7th day of October, 2009.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge